15-3356 United States v. Eric A. Spicer Argument not to exceed 15 minutes per side. Mr. Smith, you may proceed for the appellant whenever you're ready. May it please the court, counsel, Your Honor, I'd like to reserve four minutes for rebuttal. This case involves a gentleman by the name of Eric Spicer who had 21 years in law enforcement. He was a major in the Greene County Sheriff's Department, which is located in Zemia, Ohio. What complicates or muddies the water, I expect, and what will appear in this oral argument, which you see in the briefs, is that the case is really made up of two distinct pieces. There are counts in the indictment, 3, 4, 5, and 7, which the sum and substance of those allegations was that Major Spicer had lied, falsified documents, falsified the signature of the elected sheriff to obtain a machine gun in proper name and registration with the Greene County Sheriff's Office. He was acquitted on all of those counts. Counts 1 and 6, count 2 was a perjury charge that he was acquitted of. It really doesn't have anything to do with our discussion. Counts 1 and 6 involve sections 922 and 5861 of the U.S. Code. They both deal with the prohibition of possessing a machine gun. Unfortunately, the latter statute is very old. Congress passed 922 probably 20 years later, and those statutes in this situation become irreconcilable. Here's what I mean. The latter statute prohibits the possession of a machine gun if it's not registered to you. The former statute, 922, the newer one, prohibits the possession of a machine gun unless it's authorized by either a federal agency or a state agency. I'm ad libbing, but this is the sum and substance of these statutes. When you have a terrorist, a criminal, or someone who was never authorized to possess a machine gun, then those statutes are not irreconcilable. But when you have a case like this where law enforcement, who is authorized under certain circumstances, that is what we'll discuss, to possess a machine gun, then those two statutes are irreconcilable because it's impossible for an individual to register a machine gun in their name. But if the prosecution agrees that we should vacate that conviction, what difference does it make? Well, that's a Solomon have the baby type suggestion. They are different statutes, and it doesn't answer the question of whether justice has been done and whether the instructions were proper and whether 922 is vague, and those are the other arguments that we would have to make. But if you get rid of one, then you can't possibly have an irreconcilable argument. If one of them is gone, you may still have a lot of issues with the remaining one. But the question I think Judge White was asking was, well, if the government agrees that one of them has to go, then how can they be irreconcilable? Well, I guess we might be in a semantical argument. Certainly, we would accept a dismissal of the latter and move on to the other issues. It doesn't obviate the other issues. That wasn't the way we were presented within the trial court, and quite frankly, because those two irreconcilable statutes were instructed to the jury, it caused the other problems that I'll be discussing today. So I guess— Yeah, I would say just concentrate on 922. Thank you. Because the other one's going away. Right. Thank you very much. I appreciate that, Your Honor. So when a law enforcement officer legally possesses a machine gun under the authority of state law, the question is, when he terminates his employment from that agency for whatever reason, it doesn't matter if you're fired or you're removed, the question becomes, if the agency agrees to transfer that firearm to another agency where you're going to go to work, how does the individual understand or know what it is he's supposed to do to comply with 922? I think that's the issue in this case. How does the law provide him with notice that he may be subject to a career-ending violation if he relies on what the employer tells him he can do, which is what happened in this case? The problem with this case is that that was your client's side of the story. You had other people saying that there was no agreement to transfer it, that he basically didn't even know that he had this machine gun. Your Honor, we would part ways on the record in that because— Sorry, what? We would part ways, you and I, with the record. Okay. Because in this case, it was the government's own witnesses who established the following. Number one, that when he was terminated, there was a discussion with the sheriff asking for the transfer of the weapon to which the sheriff responded, okay. The other participant in the conversation—this is the government's witness as well— who said the sheriff didn't say, okay, he said, I'll look into it. So those are the government's witnesses. That's not—  I'm sorry, Your Honor. You're interpreting—you're saying that the jury should have interpreted I'll look into it as being okay. No. The sheriff's testimony was okay. The government's witness, the actual sheriff, said when I was asked to transfer the weapon, I said okay. That's in the record. And what happened after that was Officer Spicer sits at home and waits and what happens is, unbeknownst to him, in the 14 days between that conversation and a search warrant at his house, is that everybody's running around trying to figure out if he legally acquired it in the first instance, the accounts that he was acquitted of. And what they do is nobody gets back to him. The sheriff doesn't get back to him and say, you better bring that in because we're not going to do it. The ATF doesn't call him up and say, hey, there's a problem with this weapon. You need to return it to the sheriff or bring it to us. He sits and waits and they descend on him in 14 days with a search warrant and say, you violated the law by possessing this weapon. That's the facts of the case. So even though he knew he wasn't supposed to have it unless he had authority, he sat and waited for others to do things to figure it out for him? Well, Your Honor, that question is pregnant. Because in that question, you're saying that he knew he didn't have authority, which goes to the vagueness argument that I want to address in this. Because no, he doesn't know he doesn't have authority. He has asked for it. There's nothing vague as I remember this, Gregory. There was nothing vague in the group, the sheriff's department, telling him he was to return to the sheriff's department all sheriff's department equipment, which he did not do because he himself is the one who caused the machine gun to be registered to the sheriff's department. That's correct. Even though for reasons nobody seems to do, it was never actually in the inventory. But he knew it was sheriff's department equipment. No question. I agree with that. He was told to return it. He was told to return it, and the conversation takes place right at the end of that period of return where he has Chief Shade call the sheriff and say, hey, would you transfer this to my department so we can keep it, basically? And the sheriff says, okay. I thought he said, I'll look into it. That's what Shade says the sheriff said. The sheriff said, I said, okay. Both government witnesses. So whose memory is right, I can't tell you. All I know is that Officer Spicer rationally and reasonably relied on that conversation. I'm wondering what Fisher said that he acknowledged the possible need for a transfer. Is that what he said? I can only tell you. Fisher testified that he said, okay. Okay, I'll transfer it. Okay, I'll look into it. Okay. I don't know. Okay. I can only tell you what the record says. When he was asked. He didn't say that. Now the jury obviously did not believe him on that because they acquitted Officer Spicer of all of the allegations that were premised on the sheriff's position that I didn't know anything about.  He clearly indicates that when the sheriff's office called him. He was told, hey, there's a machine gun that needs to be transferred from our department to Jackson Township. Can we do that? And the answer was yes. And he was further told, we understand that Officer Spicer bought it with his own funds. And when asked, he said, well, yeah, you're allowed to do that. What happened was they went and looked at inventory. It wasn't there in the written inventory. And the government's own witness, Barbara O'Rourke, said, yes, I was supposed to put it in an inventory. And it was my failure to do that. That's why they didn't find it. She did. She did say that. Officer Spicer. No question. So Officer Spicer bought the gun with his own money, but knowing that he couldn't have it registered to him, he probably couldn't, and he had it registered to the sheriff's department. Correct. He never got it put into inventory in the sheriff's department. So he never provided the necessary paperwork. Then when his appointment with the sheriff's department was terminated, he was told to return all sheriff's department property, which he did not do, but instead engaged in an attempt to get this weapon transferred to the township police department. My dad knowing townships as well as I do, that kind of boggles my mind. But to get it transferred to the township police department. And now relies on the sheriff's having said okay, which could mean anything from okay, I hear you, to okay, I'll get to it, to okay, I'll see what we can do, to okay, we'll transfer it. And no one says that he did say okay, we'll transfer it. Meanwhile, your client is holding on to the weapon that is not registered to him, and he is no longer authorized by that department to have it. Is that true? Well, no. Where we part ways, Your Honor. I'm sorry. What part isn't true? The last part. When the sheriff said, the sheriff is the one with the authority, as however one might define that. That's an argument in the case. The sheriff couldn't say legally to someone who is no longer an employee of the sheriff's department, oh, it's okay for you to possess this machine gun. The sheriff could not do that to you. I disagree. I don't know. Okay, what would be- I don't know the answer to that. What would be the legal authority on which a sheriff could permit someone who is not an employee of the sheriff's department to possess a weapon that the law prohibits him from possessing? I'll transfer it. Okay, I'll get it transferred to Jackson Township, take it over there. That's the answer to your question. If it's in the possession of the sheriff's department where it should have been, I agree with you 100%. Well, Your Honor, and the best way I can sum up, because I know my time is over, the best way I can sum up for you is, hey, hindsight's 20-20. I wish you'd taken it in and sat it down in the Green County Sheriff's Office until it got transferred. I agree with you. But we're talking about whether someone's going to be indicted for a crime, not whether who's right and who's wrong, and whether this is a negligent act on somebody where they were careless. That's my answer to your question. Thank you. Thank you. Good morning. Mary Beth Young on behalf of the United States. Isn't it a little harsh to send a guy off five years for possessing a weapon and brought him in before he can act? Well, of course, he got five years probation, Your Honor, and the district court took into consideration the facts of the case and determined that his sentence of probation was appropriate. But as far as whether there was a violation, the United States certainly thinks there was sufficient evidence to support the jury's verdict here that when Eric Spicer possessed a machine gun, 22 days after receiving his termination letter from the Green County Sheriff's Office, he was no longer possessing it under the authority of the Sheriff's Office. The jury was entitled to consider the range of time that Eric Spicer had had that weapon, including while he was employed. And as you're aware, he bought it with his own money. Nothing inherently wrong with that. But then every step, he proceeded to sort of treat it as his own personal weapon. The jury acquitted him of all that, do you think? I don't think that's fair to say. I mean, the jury acquitted him of making false statements on particular documents, indicating that it found a reasonable doubt as to those particular charges. But the evidence regarding what happened is nonetheless relevant and can be considered when you're looking at what was his authorization at this later time when the search warrant was executed. The jury could consider that full range of circumstances. And looking back, he didn't put it into inventory. Now, granted, there was an inventory officer. They had some brief conversation. But only Officer Spicer had the information as far as the serial number. This clerical employee was not in a position to do that without receiving information from him, which he acknowledges he did not provide. He also kept it in his office. He took it to his home for months while he was on administrative leave, and that's before he was terminated. And then once he was terminated, he has a very clear written instruction to return all property of the Greene County Sheriff's Office, which he acknowledges this was, and to return it by March 13th. Very easy answer. Of course, we understand he was attempting to transfer it to the township police. In the meantime, he could have simply returned it to the Greene County Sheriff's Office, making provision for the transfer, and when the transfer was complete, if it were completed, the weapon would have been transferred. But he did not take those steps. So if the jury believed that he had been told things by both the sheriff and the new police department that they were going to facilitate the transfer, would he still be guilty? If the jury had believed that, perhaps not. I mean, I think ultimately this was a jury question, and Eric Spicer presented the evidence about his understanding of that conversation. But what I'm leading to is a jury instruction that included the language that he had to have been acting in his official capacity. Yes, Your Honor. So I'm just asking whether that's problematic under the facts of this case, where he's not employed by either. And so even if he was simply – even if they told him, I mean, you know, all right, you can just hold on to it. We're going to work on the paperwork. He wouldn't be acting in his official capacity, would he? I think, Your Honor, that one – I think in looking at whether someone's acting in an official capacity, the question is whether you're acting for the purposes of your agency. And if what you're doing is holding a firearm for a brief time, consistent with instructions from your agency in order to accomplish a transfer. For example, the one-week period here that was given to return property. During that time, although he was not an employee, I think it would be a fair understanding that he's acting in an official capacity because he's effectuating the return of property during a reasonable time period provided by his agency. That's not the facts here. And keep in mind that nothing in the instruction required that he be an employee. The instruction was that he needed to be acting as an agent in an official capacity. And that's consistent, Your Honor, with what this court said in its decision in Vunich. And Springer – Springer was looking at – it was a federal agent, a soldier who took home a rocket. And the court said the question is whether he's acting as a federal agent or in a private – as a private citizen. Also, the regulations ATF has passed implementing 922.0 state that law enforcement use is limited to official use. And, in fact, Mr. Spicer had completed several forms in the course of acquiring this weapon where he acknowledged that this is limited to official use. We think the instruction fairly presented that issue to the jury. And I remind the court that the instruction that defendant himself proposed, if you look back at defendant's proposed instruction, it contained the very same official capacity and agent language. So what was that comment that counsel said to the court that – because I was a little confused by this – I think the court was too, Your Honor. He was having trouble with the official capacity. There was a conversation where the defense counsel indicated they were having a problem with the official capacity language. And, basically, it didn't get resolved. It ended with the court saying something like, we'll deal with that later. When the instructions were ultimately given to the jury and the court was asking whether there were further objections, some general objection was made. The court said, I consider your objections preserved consistent with the filed proposals. Well, the filed proposal was defendant proposing the official capacity instruction. If there were some further objection, defendant should have at that point explained it to the court. And that did not happen. And I'd remind the court that part of that jury instruction was the jury was instructed if there was a reasonable doubt about whether he was authorized, he should be found not guilty. And we think that's more than adequate to address the sorts of situations that Your Honor has asked about. Mr. Spicer also raises vagueness concerns. And the United States does not think those are warranted. There was enough in this statute, as this court said in Thunek. Interestingly, Thunek, while it was under 5861D and not 922O, it actually involved possession by a police chief. That was one of the defendants there. And although it was a police chief, the possession was not for official purposes. There was no apparent law enforcement use of the machine guns. And this court said that an ordinary person is on notice that disingenuously registering a firearm to an organization while possessing it personally violates this provision. And we think the same is true of 922O. Well, are you saying that the registration of this firearm in this case to the Sheriff's Department was disingenuous? Or are you saying that the proposed intent to transfer it is disingenuous? Is that what you're saying? No, Your Honor. And that piece of Thunek really pertained to the fact that what was at issue there was the registration. As you know, the United States is conceding the 5861D charge shouldn't have been submitted here. So really the question is whether the possession was authorized. It may well be the case that he intended to transfer this weapon, but he should not have been possessing it in that interim period. He had been terminated. He had been put on administrative leave before the termination. And, frankly, the jury was entitled to conclude that what was happening here is Eric Spicer, while acknowledging this was government property, was miffed at the Sheriff's Office and did not want to take this weapon back to them. Instead, he holds on to it. Majors from the Sheriff's Office come. They claim his service pistol, his taser, other property, and at no point does he say, oh, hey, I've got this machine gun in the basement. There were plenty of opportunities for him to avoid coming anywhere near violating this if that was what he chose to do. I think this is what the cases describe as sort of intentionally putting yourself precariously near an area of being at risk, and that's what he did here. Is there any inconsistency here between the verdicts? Because we've got the counts from which the jury found not guilty that all deal with the sort of pre-termination possession. We've got the guilty verdicts or the post-termination possession, and they involve evaluation of the credibility of the same witnesses. So is there an inconsistency in these verdicts? First, I don't think there's any inconsistency in the verdicts because as to each count, the jury is presented with different questions. Was there reasonable doubt that this particular document involved a false statement? And was there a reasonable doubt that this possession, 22 days after his termination, years after the documents were signed, was under the authority of the sheriff's office? I don't see any inconsistency because there are different questions, but I'd point out that even if there were any perceived inconsistency, that's not a reason for reversal under established case law. Thank you, Your Honors. The jury instructions are a problem in this case, and there's no confidence in the guilty finding of 922. Here's why, as simply as I can put it. In count 6, I know we don't want to talk about it, but it polluted count 1. That's the point I need to make. In count 6, the judge told the jury that he can't possess a firearm not registered to him. He then turns around and says in count 1, he's guilty if he's not authorized to possess it. That inconsistency, including count 6 and that instruction to the jury, leads them only to one path. It's not registered to him. He can't be authorized. It commands a guilty verdict on both. That is why, including count 6 in the case, has caused this verdict to not be substantiated. It is nothing that we can have confidence in. When you give a jury that Hobson's choice, which is no choice at all, it is also not true in the instructions that authority was defined the same. The judge defined authority differently in count 6 than he did in count 1. Count 6, and I quote, the section does not apply to a machine gun registered to law enforcement and possessed by a member during the course of his employment. He's not employed. There's no dispute in the case. Yes, but the same jury is listening to that. In other words, he can't have authority on two strikes under count 6. He's not employed, and it can't be registered to him, which is an impossibility. It leaves the jury nowhere to go on count 1 when you get to the question of is he authorized to possess it. The judge has told them the law prevents him from possessing it. He can't have authority. But the jury got it on the counts that involved his possession of it while he was employed, so they got that if he had proper authorization, he could actually possess it. So those not guilty verdicts actually cut against Jury. I don't know what they got. I know they were told he's not authorized to possess it because it's registered to him and he's employed on one count. On the other count, they're told he can't have it unless he's authorized. And he's just told two things. There's no way. It's impossible for him to comply under the facts of the case. And all I'm saying to you is that just gives no confidence whatsoever in the jury verdict on count 1. Remember, they found him guilty of both. I say those instructions led that jury to only one conclusion, guilty of both. The other thing I need to comment on, and I'm going to quote from Officer the Agent on the issue of vagueness and on what's been raised here. I asked him this question. If a person has a machine gun legally and he's over at his mother's house on Easter and gets a phone call that he's been fired, is he guilty of a felony the second after that phone call has been made because he's in possession of the gun? His answer, no, only if you could show he's not going to return it. And so what it collapses into in this case, and by the way, there's three or four other examples where the agent gives differing interpretations on what it means and when you can possess this firearm after you're terminated. I don't have time to read them all, but they're in there. What I want to conclude with is that the problem in the case is how is Spicer supposed to absolutely know that he is or is not violating the law in light of the conversation that takes place with the sheriff? That's the end of it. And I know I'm finished. Thank you, counsel. Thank you.